**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:22-CV-80527-RAR

ZACHARY YOUNG and
NEMEX ENTERPRISES INC.,

Plaintiffs,

  v.

CABLE NEWS NETWORK, INC.,

Defendant.

---

## DEFENDANT CABLE NEWS NETWORK, INC'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Cable News Network, Inc. ("CNN") moves this Court to dismiss Plaintiffs Zachary Young and Nemex Enterprises Inc.'s (collectively "Plaintiffs") Complaint (D.E. 1) in this action for failure to state a claim. In support of this motion, CNN states:

Plaintiff Zachary Young ("Young") and his company Nemex Enterprises Inc. ("Nemex") have brought multiple overlapping defamation claims against CNN for reporting on the difficulties faced by Afghans as they attempted to evacuate the country after the withdrawal of American troops. Plaintiffs' Complaint fails to plead the alleged defamation with any specificity. Although based on alleged false statements, the Complaint does not identify any such statement about Plaintiffs. Moreover, Plaintiff Young draws unreasonable and unintended inferences from CNN's reporting in attempting to set forth his defamation by implication claim. The Complaint fails as a matter of law and must be dismissed.

## BACKGROUND

On August 15, 2021, while American troops executed a withdrawal from Afghanistan, its capital fell to the Taliban. (D.E. 1 ¶ 17). Evacuation efforts became urgent, chaotic, dangerous, and, at times, violent. *Id.* Many American citizens and at-risk Afghans failed to get out before the last American troops left the country. *Id.* ¶¶ 17-18. Amidst the chaos and the increased need for

evacuation assistance, Young, a former U.S. government operative, began to advertise short-notice evacuations from Afghanistan on LinkedIn to sponsors with funding. *Id*. ¶¶ 4, 8, 22, 24. He says he was contracted by large multinational corporations and NGOs to provide evacuations and "saved dozens of high-risk Afghans from execution, torture and/or imprisonment by the Taliban." *Id.* ¶¶ 31-37.

On November 11, 2021, CNN aired a segment on *The Lead with Jake Tapper*, reported by Alex Marquardt, that focused on the desperation certain Afghans felt as the urgency for evacuations grew more dangerous and costly ("the Segment"). Declaration of Giselle Girones ("Girones Decl."), Comp. Ex. A (containing transcript of Segment); Notice of Conventional Filing (D.E. 23) (containing video of Segment). Two banners (textual matter across the bottom of a screen) rotate periodically throughout the Segment, the first of which reads: "Afghans trying to flee Taliban face black markets, exorbitant fees, no guarantee of safety or success" ("First Banner"). *Id.* The second banner reads: "Afghans and activists report demands of $10k-$14k for attempts to get family members out of country" ("Second Banner"). *Id.*

The Segment features two men (not identified for their safety) who spoke about their inability to pay high fees to evacuate their families who, in the case of one man, faced threats from the Taliban. *Id.* at 0:42-1:58; 2:10-3:02; 4:00-4:30. Grappling with the imminent danger his family faces, the first unidentified man ("First Unidentified Man") discusses how he turned to Facebook and was approached by a man offering ways to get Afghans out for $10,000 per person in cash. *Id.* at 1:11-1:58. The Segment reports on Afghans and activists' claims that, like the First Unidentified Man, desperate Afghans seeking to flee the Taliban are being exploited. *Id.* at 1:58-2:10. The Segment then shifts its focus to the second man who is identified only as a contractor for USAID ("Second Unidentified Man"), and reports on his frustration with the U.S. government, noting his claim that the U.S. is "not doing [ ] anything" to get his family out of Afghanistan. *Id.* at 2:33-3:02. Desperate to get out of the country, the Second Unidentified Man went online and found Young, who was "advertising evacuations from Afghanistan." *Id.* at 3:03-3:10. The Segment then displays a screenshot of Young's LinkedIn advertisement, as well as screenshots of his LinkedIn messages with one user, who Young tells that it would be $75,000 for a car to Pakistan and tells another that it would be $14,500 per person to get to the United Arab Emirates. *Id.* at 3:11-3:29. The Segment goes on to quote Young as stating to CNN, "Afghans trying to leave are expected to have sponsors pay for them," and "if someone reaches

2

out, we need to understand if they have a sponsor behind them to be able to pay evacuation costs," which he said are "highly volatile and based on environmental realities." *Id.* at 3:36-3:51. The Segment also included statements from Young noting "availability [for evacuations] is extremely limited and demand is high . . . that's how economics work, unfortunately." *Id.* at 4:44-4:54.

Also on November 11, 2021, *The Lead with Jake Tapper* show's Twitter account, @TheLeadCNN, tweeted a link to the Segment along with text of part of the anchor introduction and a quote from a statement in the Segment made by the First Unidentified Man pertaining to his struggles to evacuate ("The Lead Tweet"). Girones Decl., Ex. B. On November 12, 2021, Marquardt retweeted The Lead Tweet from his account, @MarquardtA, with a caption that read:

> There is growing exploitation of desperate Afghans trying to get out. Private operators telling them it'll take families 10s of 1000s of dollars. We spoke with two Afghans trying to get their families out. (W/@MichaelTConte)

In reply to this tweet, Marquardt attached screenshots of Young's LinkedIn messages with a caption that read:

> Here's an example of someone advertising evacuations on LinkedIn. $75k to Pakistan, $14.5k to UAE. "availability is extremely limited and demand is high . . . That's how economics works, unfortunately."

Girones Decl., Comp. Ex. C (Marquardt's tweet and its reply are collectively referred to as the "Marquardt Tweet").

On November 13, 2021, CNN published an article on its website entitled "*Some Afghans trying to flee country face exorbitant costs as Blinken touts success of efforts to help Americans*" ("the Article"). Girones Decl., Ex. D. The Article centered on the hardships faced by certain Afghans frantic to flee the country, such as limited space on evacuation routes and steep evacuation prices charged by private operators, and tells the stories of the First Unidentified Man and the Second Unidentified Man.

The Article briefly mentions Young's evacuation services and explains that the Second Unidentified Man spotted Young's posts "advertis[ing] evacuations from Afghanistan," on LinkedIn. *Id.* The Article reports the prices Young was charging and includes statements from Young explaining "per [person] is expensive because availability is extremely limited and demand is high . . . that's how economics works, unfortunately." *Id.* Like the Segment, the Article also quotes Young as stating that "if someone reaches out, we need to understand if they

have a sponsor behind them to be able to pay [evacuation] costs" which are "highly volatile and based on environmental realities." *Id.* at 4. The Article reports that CNN had not yet confirmed whether operators charging fees had been successful in their evacuation operations. *Id.* It concludes by reporting on the First Unidentified Man's fears for his family's livelihood and increased desperation in trying to reach out to anyone he can think of, including members of Congress, for assistance. *Id.*

On March 31, 2022, Plaintiffs sued CNN for defamation, defamation by implication, group libel, and trade libel based on several "statements or insinuations" in the Segment, Article, The Lead Tweet, and Marquardt Tweet (collectively, "the Publications"). Plaintiffs do not delineate what statements from what Publications form the basis of each of their claims. Rather, Young alleges CNN defamed him by "stating or directly insinuating" that Young: (1) "provided his services on a black market;" (2) "advertised his services to desperate Afghans;" (3) and "exploited desperate Afghans." (D.E. 1 ¶¶ 66-68). He brings claims for defamation (Count I), defamation by implication (Count II) and group libel (Count III), often neglecting to identify which of the Publications he claims defamed him and in what way. Nemex brings solely a trade libel claim (Count IV) premised upon wholly unidentified "false statements" that it claims induced others not to do business with Nemex. As set forth more specifically below, Plaintiffs' Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

## ARGUMENT

Plaintiffs' Complaint cannot survive this Court's scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and disposition of this case at the dismissal stage is appropriate. Both federal and Florida courts stress the prominent function courts play in defamation cases and favor the early dismissal of untenable claims. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing the court's "prominent function" in defamation cases to "either dismiss[] the complaint for failure to state a cause of action or [ ] grant[] a directed verdict at the proof stage"). Pretrial disposition is especially appropriate in defamation cases because of "the

chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978).

Plaintiffs identify the four Publications in their Complaint but do not identify what Publication or which statement within each Publication gives rise to each of the "statements" or "insinuations" Plaintiffs complain about.[1] In piecing together the murky picture Plaintiffs painted of their claims, it is clear Plaintiffs' claims cannot survive scrutiny under Rule 12(b)(6).

- First, Young's defamation *per se* claim (Count I) fails because the Publications do not contain the false statements of fact he challenges.

- Second, Young's defamation by implication claim (Count II) fails because, contrary to Florida law, it is premised upon allegedly *false* statements and does not identify the purportedly truthful facts required to form the basis of a defamation by implication claim. It likewise fails to set forth the unique elements of an implication claim. Any

---

[1] Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Because the Court must examine each challenged statement to determine whether it can support a cause of action, defamation allegations must be pled with specificity and clarity. *See Bezeau v. Cable Equip. Servs., Inc.*, No.14-24538-C1V, 2015 WL 3540009, at *4 (S.D. Fla. May 27, 2015). To satisfy this standard, plaintiffs seeking to advance a defamation claim "must set out the substance of each allegedly defamatory statement on which they are proceeding; the date, place and manner of publications; to whom each statement was made; and facts showing the damage flowing from each statement." *Id*. In setting forth their claims, Plaintiffs fail to identify the substance of each allegedly defamatory statement on which they are proceeding. When setting forth each claim, Plaintiffs incorporate all prior factual allegations into each count and fail to identify which Publication and which statement(s) within each Publication purportedly give rise to which defamatory meaning they attempt to allege. For example, in Count I Young merely alleges CNN published "false statements of fact," "materially false statements," "false statements," and "false and defamatory statements" without identifying what statements he is referring to. (D.E. 1, Count I). He also alleges, for example, that CNN "falsely stated or implied and insinuated" that he "'exploited' those 'desperate Afghans'" without identifying which statement (or even which Publication) he contends contained that false statement or implication and insinuation. *Id*. Likewise, Nemex bases its trade libel claim (Count IV) on "false statements," again without identifying the substance of each allegedly defamatory statement on which it is proceeding (D.E. 1 ¶ 118). The net effect of Plaintiffs' pleading approach is to hide the ball—to thwart CNN's ability to figure out which of the four Publications is contended to support which of the four claims in the Complaint and to identify what statements within those Publications Plaintiffs believe to be actionable.

amendment of his implication claim would be futile because the implications alleged are not reasonably construed from the words used and not intended by CNN.

- Third, regardless of whether framed as defamation *per se* or defamation by implication, Young's claims premised on an accusation that CNN stated or implied Young advertises his services directly to Afghans is not actionable because this is both substantially true and not defamatory even if it were false.

- Fourth, Young's group libel claim (Count III) fails because it is duplicative of his defamation claim and because the purported "group" is not sufficiently defined.

- Finally, Nemex's trade libel claim (Count IV) fails because the Publications are not "of and concerning" Nemex and because the claim is yet another attempt by Young to recast his individual defamation claim into a duplicative cause of action.

In short, Plaintiffs have not presented a well-pleaded complaint. They are unable to state a viable claim against CNN, and the Complaint should be dismissed.

## I.     YOUNG'S DEFAMATION CLAIMS FAIL AS A MATTER OF LAW.

### A.  Young Cannot Establish a Viable Defamation *Per Se* Claim.

To state a valid defamation claim, Young must plead and prove the following elements: (1) a false and defamatory statement of fact of and concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) damages. *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)). A "false statement of fact is the *sine qua non* for recovery in a defamation action." *Byrd*, 433 So. 2d at 595; *accord Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008); *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234 (Fla. 3d DCA 2021).

Defamation is considered *per se* if "when considered alone without innuendo," the *false* statement of fact: (1) charges the person with committing a crime, (2) charges the person with contracting an infectious disease, (3) tends to subject the person to hatred, distrust, ridicule, contempt or disgrace, or (4) injures the person in his/her trade or profession. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (Ruiz, J.), *appeal pending*, 21-10840 (11th Cir. 2021); *Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1274 (S.D. Fla. 2016); *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955). The court may not "go beyond the four corners of the publication in determining whether or not there is libel per se." *Barry College v.*

*Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977). A *per se* defamation claim exists only where words "upon their face and without the aid of extrinsic proof were injurious." *Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 633 (Fla. 5th DCA 1983), *approved*, 467 So. 2d 282 (Fla. 1985) (quotations and citation omitted). As such, if the court is "required to read words into the [publication] that are not there," it is not libel *per se*. *Eakin v. Rosen*, No. 7:15-CV-224, 2017 WL 5709564 (M.D. Ga. Nov. 27, 2017), *appeal dismissed,* 2018 WL 1580983 (11th Cir. Mar. 9, 2018) (granting judgment on the pleadings).

To be actionable as defamation *per se* the statements complained of must also be "specifically directed at the plaintiff." *Rosenblatt v. Baer,* 383 U.S. 75, 81 (1966); *Miller v. Twentieth Century Fox Int'l Corp.*, No. 3:98-cv-1177, 29 Media L. Rep. 1087, at *4 (M.D. Fla. Oct. 16, 2000) (challenged words must refer "solely or especially" to the plaintiff); *Thomas*, 699 So. 2d at 805 (the allegedly libelous statements must "refer to a plaintiff"). Thus, to sustain a defamation *per se* claim, the plaintiff must plead a false and defamatory statement of fact explicitly stated in the publication, and the Court must limit its interpretation to the challenged statements in the publication. *Cooper v. Miami Herald Publ'g Co.*, 31 So. 2d 382, 384 (Fla. 1947) ("innuendos in the pleadings are ineffective for the purpose of fixing the character of an alleged libelous publication as libelous per se."); *Corsi*, 519 F. Supp. 3d at 1119; *Rubinson*, 474 F. Supp. at 1274, 1277.

This Court must look no further than each of the Publications to determine whether their character is such that the statements expressly contained therein constitute defamation *per se.* Here, none of the Publications contain any specific statement that Young: (1) "provided his services on a black market;" (2) "advertised his services to desperate Afghans;" or (3) "exploited desperate Afghans." (D.E. 1 ¶¶ 66-68). He cannot, therefore, bring forth a defamation *per se* claim.

### 1.   *No Publication says Young "provided his services on a black market."*

Young alleges the Publications falsely state that he was providing evacuations in a "black market." (D.E. 1 ¶¶ 66, 85, 93). As an initial matter, the Article and the Marquardt Tweet do not contain any reference to a "black market" at all. Thus, though Young's vague pleading fails to

specify which Publications form the basis of his defamation *per se* claim, these particular publications cannot possibly be the basis for Count I of the Complaint.

The Segment and The Lead Tweet *do* reference a black market, but not in direct reference to Young. The Segment references a black market in two places: the anchor introduction read by Jake Tapper and the First Banner, which appears on screen four times during the Segment. The anchor intro to the Segment states in full:

> In our world today, the U.S. government, the Biden administration, says that as of last week it had assisted in the departure of at least 377 U.S. citizens and 279 lawful permanent residents of the U.S. from Afghanistan since August 31st. Still, many Afghans, Afghans who desperately want to flee Taliban rule and Afghans who say their lives are at stake, remain behind. As CNN's Alex Marquardt has discovered, Afghans trying to get out of the country, face a black market full of promises, demands of exorbitant fees, and no guarantee of safety or success.

Girones Decl., Comp. Ex. A; (D.E. 23). The Lead Tweet reproduces just the last sentence of the anchor intro and includes a link to the Segment. Girones Decl., Ex. B. During this anchor intro to the Segment, the First Banner appears which reads: "Afghans trying to flee Taliban face black markets, exorbitant fees, no guarantee of safety or success." The First Banner rotates on and off four times throughout the Segment, alternating with the Second Banner.[2] Girones Decl., Comp. Ex. A; (D.E. 23). Neither the anchor intro nor the First Banner makes any direct reference to either Plaintiff or otherwise state that *Young* was operating in a black market. These statements are not actionable by Young as defamation *per se*.

### 2. No Publication says Young "advertised his services to desperate Afghans."

Young next alleges that the Publications falsely state or imply that Young "advertised evacuations directly to" "desperate Afghans." (D.E. 1 ¶¶ 55, 67, 85, 93). But none of the Publications state, as Young alleges, that Young was advertising "directly to desperate Afghans." Again, as an initial matter, The Lead Tweet does not refer to Young's efforts to advertise his services at all and presumably is not one of the bases for this part of Young's claim.

And while the Segment, Article and Marquardt Tweet reference Young's services, the statements merely indicate that Young was "advertising evacuations *from* Afghanistan" on LinkedIn. *See, e.g.*, Girones Decl., Comp. Ex. A; (D.E. 23) (emphasis added); Girones Decl., Ex.

---

[2] The Second Banner reads: "Afghans and activists report demands of $10k-$14k for attempts to get family members out of country." Girones Decl., Comp. Ex. A; (D.E. 23).

D ("Like the young Afghan American in California, the father tried multiple avenues. On LinkedIn, he spotted posts by Zachary Young, who repeatedly *advertised evacuations from Afghanistan*, promising this week, 'we can deliver.'") (emphasis added); Girones Decl., Comp. Ex. C (in reply stating "Here's an example of someone *advertising evacuations on LinkedIn*" and attaching screenshots of Young's LinkedIn messages setting forth prices) (emphasis added). The Publications do not state that Young advertised directly to desperate Afghans, and thus, Young cannot support his *per se* claim because he cannot point to any false statement specifically about him in this regard.[3]

### 3. No Publication says Young "exploited" "desperate Afghans."

Finally, although Young contends the Publications falsely state that he was "exploiting desperate Afghans" (D.E. 1 ¶¶ 52, 55, 57, 68, 85, 87, 93), none of the Publications say that. Here again, The Lead Tweet does not mention Young at all and presumably is not one of the bases for this part of the claim.

The Segment and Article report on the general troubles experienced by certain Afghans as evidenced by the First Unidentified Man's experience with individuals on Facebook seeking tens of thousands of dollars. After discussing the First Unidentified Man's experience, the Segment reports that "according to Afghans and activists [CNN has] spoken with, desperate Afghans are now being exploited, like that [First Unidentified Man], told that they can get them or their families out if they pay exorbitant often impossible amounts." Girones Decl., Comp. Ex. A; (D.E. 23). Similarly, the Article discusses the First Unidentified Man's experience and states: "'It's getting worse because now it's becoming normalized and desperation has grown,' says Hazami Barmada, a humanitarian aid worker who has organized flights out of Afghanistan and says people 'absolutely are' making money by exploiting that desperation." Girones Decl., Ex. D. Barmada also claims he "understand[s] why there needs to be hazard pay" but explains that "guarantees being made with the high prices are impossible to rely on." *Id.* The Marquardt Tweet similarly states that "there is growing exploitation of desperate Afghans trying to get out. Private operators telling them it'll take families 10s of 1000s of dollars. We spoke with two Afghans

---

[3] A statement indicating someone is advertising his services is likewise not a *per se* category of defamation. *See, e.g., Corsi* 519 So. 3d at 1110 (setting forth the categories of defamation *per se*). But even if the Court were to consider Young's claim here as a *per se* claim, indicating he advertised his services to Afghan citizens is substantially true and is not defamatory as a matter of law. *See, infra*, Part C.

trying to get their families out." Girones Decl., Comp. Ex. C.[4] There is no statement accusing *Young* of "exploiting desperate Afghans," and therefore, there is no statement "of and concerning" him. He cannot, therefore, state a defamation *per se* claim as to this alleged statement.

In sum, none of the Publications contain an allegedly false statement of fact of and concerning Young, so they cannot serve as the basis for Young's defamation *per se* claim. Accordingly, the Court should dismiss his defamation *per se* claim as a matter of law.

**B.  Young Cannot Establish a Viable Defamation by Implication Claim.**

Young also purports to set forth a defamation by implication claim against CNN. As the Florida Supreme Court explained, a defamation by implication claim occurs when a defendant's factual statements are "literally true," but "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Rapp*, 997 So. 2d at 1106, 1108; *see also Corsi*, 519 F. Supp. 3d at 1124; *Spilfogel v. Fox Broad. Corp.*, No. 09-cv-80813, 2010 WL 11504189, *4 (S.D. Fla. May 4, 2010) ("Defamation by implication arises where the accused publication is factually true, but conveys a false and defamatory meaning to the ordinary reader"). Defamation by implication claims differ from defamation *per se* claims in that an implication claim must be based on *truthful* statements that give rise to a false and defamatory implication; whereas, defamation *per se* claims are based on *false* statements that are also defamatory. *Parekh v. CBS Corp.*, 820 F. App'x 827, 835 (11th Cir. 2020); *Sloan v. Shatner*, No. 8:17-CV-332, 2017 WL 3332232, at *3 (M.D. Fla. Aug. 3, 2017) (*Sloan I*); *accord Sloan v. Shatner*, No. 8:17-CV-322, 2018 WL 3769968, at *6 (M.D. Fla. June 22, 2018) (*Sloan II*).

The plaintiff, thus, must affirmatively allege the challenged statements are literally true. *Barbuto v. Miami Herald Media Co.*, No. 21-cv-20608, 2022 WL 123906, at *5 (S.D. Fla. Jan. 13, 2022) *appeal pending*, No. 22-10472 (11th Cir. 2022); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240 (S.D. Fla. 2014) (finding statements alleged to be false cannot state a claim for defamation by implication). If a plaintiff alleges "only that accusations were false—not that they

_____

[4] Though the reply mentions Young, Marquardt includes a screenshot of Young's LinkedIn messages to illustrate evacuation prices and does not mention exploitation. Girones Decl., Comp. Ex. C. In fact, it mentions—in Young's own words—that sponsors are expected to pay these costs and that the prices are so high because of low availability and high demand. *Id.*

were true and gave a false implication," he has not alleged a defamation by implication claim. *Corsi*, 519 F. Supp. 3d at 1124 (dismissing implication claim premised on allegedly false statements).

And because imposing liability for publishing truthful statements conflicts with First Amendment protections of free speech, defamation by implication claims are otherwise subject to rigorous scrutiny. *Rapp*, 997 So. 2d at 1107 (quoting *Chapin v Knight-Ridder*, 993 F.2d 1087, 1092-93 (4th Cir. 1993)). That is, the plaintiff must not only show that the alleged implication is reasonable but must also affirmatively establish that the publisher intended or endorsed the implication. *Id.*; *see also Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1309 n.11 (11th Cir. 2001) (noting heightened standard for defamation by implication claim); *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1063-64 (9th Cir. 1998) (plaintiff must establish with "convincing clarity" that publisher intended or endorsed implication).

Here, Young's defamation by implication claim cannot survive rigorous scrutiny. He has not pleaded truthful facts that give rise to the claim. Moreover, the defamatory implications he alleges do not arise from the words used. He also has not pleaded that CNN intended or endorsed any alleged implication.

### 1. Young cannot premise a defamation by implication claim on statements he alleges are false.

Young's implication claim fails for the fundamental reason that he fails to plead any facts to support an essential element of his claim: the *truth* of the statements that give rise to the purported false and defamatory implications he alleges. Instead, Young repeatedly and exclusively characterizes CNN's reporting as *false*. He characterizes the First Banner as a "clear (and false) statement." (D.E. 1 ¶ 49). He alleges CNN's statements are "false and defamatory" and takes issue with the "objectively false and defamatory statements or insinuations" in the Publications. *Id.* ¶¶ 65-68. He alleges the statements set forth in the first 83 paragraphs of his Complaint are "false factual statements" and alleges in both his defamation and defamation by implication claims that CNN "knew its statements" were false. *Id.* ¶¶ 84-94, 95-104 (incorporating Paragraphs 1-83 and 93 of the defamation *per se* claim into the defamation by implication claim). Though Young generically alleges CNN "juxtaposed a series of facts so as to imply a defamatory connection between them" (*id.* ¶ 97), he fails to identify a single *true* fact to

support his claim and instead alleges all of CNN's statements are false. *Id.* ¶¶ 95, 104 (incorporating Paragraph 93 and alleging CNN "published the false statements" with malice).

But statements of fact cannot be both true and false, and Young cannot have it both ways. While Rule 8(d) of the Federal Rules of Civil Procedure permits contradictory and alternative *claims*, pleading standards require plausibly pleaded *facts* to be consistent. *Thomas v. Kamtek, Inc.*, 143 F. Supp. 3d 1179, 1188-89 (N.D. Ala. 2015) ("while a party may plead alternative or inconsistent claims or defenses under the federal rules, alternative pleading does not relieve a plaintiff of its obligation under Rule 8(a) to state enough facts to state a claim to relief") (citations omitted)). Consequently, this Court cannot "accept as true [p]laintiff's allegation … that [a] statement is false, while also accepting as true [p]laintiff's allegation … that this same statement is true." *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1313 n. 5 (M.D. Fla. 2021), *aff'd*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021) (affirming dismissal); *see also Sloan I*, 2017 WL 3332232, at *3 (dismissing implication claim where plaintiff had alleged the same statement was "false" and finding the allegations were "contradictory"); *accord Sloan II*, 2018 WL 3769968, at *6.

As such, even if Young had premised his implication claim on truthful statements—which he has not because he has alleged all of CNN's statements are false—he could not also premise a defamation *per se* claim on the same statements and allege they are false. This failure to set forth *true* facts is fatal to his defamation by implication claim and alone requires dismissal as a matter of law.

### 2. *The alleged defamatory implications do not reasonably arise from the Publications.*

Even if Young had appropriately alleged that false and defamatory implications arose from truthful facts contained in the Publications, his claim would still fail because the alleged implications do not reasonably flow from the Publications. By their nature, implication claims are "fraught with subtle complexities," requiring courts to be "vigilant not to allow an implied defamatory meaning be manufactured from words not reasonably capable of sustaining such a meaning." *White v. Fraternal Order of Police*, 909 F.2d 512, 518-19 (D.C. Cir. 1990). Therefore, courts analyzing implications claims should not "accept an interpretation which is tortured and extreme." *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1477 (S.D. Fla. 1987). Instead, the interpretation must be reasonable and cannot be a "forced or strained construction." *Byrd*,

433 So. 2d at 595; *see also Kronk v. Am. Media, Inc.*, No. 2011-CA-011064-O, 2015 WL
3473205, at *5 (Fla. 9th Cir. Ct. Mar. 30, 2015), *aff'd*, 216 So. 3d 640 (Fla. 5th DCA 2016)
(implication and defamatory meaning "must be deduced from words used"); *see also Cooper*, 31
So. 2d at 384 (implication is a deduction from the words used in the publication); *IBP, Inc. v.
Hady Enter.,* 267 F. Supp. 2d 1148, 1155-58, 1164 (N.D. Fla. 2002), *aff'd*, 52 F. App'x 487
(11th Cir. 2002) (defamation claim failed because plaintiff failed to prove the "words on the
labels themselves were injurious"). Thus, any purported defamatory meaning must derive from
the challenged statements, and any strained interpretation of the meaning of the actual statements
contained in the publication must be rejected. Here, the implications Young alleges do not
reasonably arise from the Publications.

      First, Young alleges the Publications falsely imply that he was advertising directly to
desperate Afghans.[5] (D.E. 1 ¶¶ 67, 96, 100). Young is mentioned in the Segment, Article and
Marquardt Tweet because the Second Unidentified Man found Young on LinkedIn, where
Young was advertising evacuations from Afghanistan. Young admits he was advertising
evacuations from Afghanistan and was advertising those evacuations on LinkedIn, which he
describes as an "online service . . . primarily used for professional networking and career
development." (D.E. 1 at 1; ¶¶ 22-24) (ellipses in Complaint). Universally, the Publications
simply state the unchallenged fact that Young was offering evacuation services from Afghanistan
on LinkedIn. Girones Decl., Comp. Ex. A; (D.E. 23) ("So he went online, where he found a man
named Zachary Young, who was one of many advertising *evacuations from Afghanistan*, posting
just this week, 'We can deliver.'") (emphasis added); Girones Decl., Ex. D ("Like the young
Afghan American in California, the father tried multiple avenues. On LinkedIn, he spotted posts
by Zachary Young, who repeatedly advertised *evacuations from Afghanistan*, promising this
week, 'we can deliver.'") (emphasis added); Girones Decl., Comp. Ex. C ("[h]ere's an example
of someone *advertising evacuations on LinkedIn*") (emphasis added).

      Young's interpretation—that he was advertising his services directly to desperate
Afghans—stretches the words used in the Publications too far. The Segment, the Article and
Marquardt Tweet each included various statements from Young which demonstrate he required
sponsors to evacuate Afghans. For example, the Segment features a screenshot of Young's

_____

[5] The Lead Tweet makes no mention of advertising (or Young) at all and here, again, Young's
nebulous pleading fails to adequately delineate which Publications form the basis of his claims.

advertisement on LinkedIn which reads: "If you are a sponsor, WITH FUNDING, serious to evacuate people from Afghanistan on short notice, please reach out. We can provide references and we can deliver." Girones Decl., Comp. Ex. A; (D.E. 23) (emphasis in original). Both the Segment and Article accurately report that Young "asks Afghans who want to leave to have sponsors cover them," and included statements from Young indicating "if someone reaches out, we need to understand if they have a sponsor behind them to be able to pay [evacuation] costs [which are] highly volatile and based on environmental realities." *Id.*; *see also* Girones Decl., Ex. D. The Marquardt Tweet likewise indicates—in Young's own words— "sponsor needs to arrange onward travel. . ." Girones Decl., Comp. Ex. C. The Publications are devoid of any reference or inference Young advertised evacuations directly to Afghans without sponsors.

Second, Young alleges CNN's reporting falsely implied that he was operating in a black market. (D.E. 1 ¶¶ 66, 96, 98). As an initial matter, the Article makes no reference to a black market at all. And the Marquardt Tweet references a black market only in its retweeting of the reference contained in The Lead Tweet, which does not name or otherwise identify Young.[6] Accordingly, it is inappropriate to premise this portion of his implication claim on either of these publications.

But even as to the Segment and The Lead Tweet, again, this implication cannot reasonably be construed from these publications. The Lead Tweet makes no mention of Young and simply includes the last sentence of the anchor intro, which paints the overall picture of a "black market of promises, exorbitant fees and no guarantee of safety or success." Girones Decl., Ex. B. It is too far of a logical leap to imply from there that *Young*—who is not even mentioned in The Lead Tweet—was operating on a black market.

---

[6] To the extent Young premises his Marquardt Tweet claim on the substance of The Lead Tweet, he cannot double dip in this manner. In Florida, a single publication (here, The Lead Tweet) gives rise to a single cause of action, and he cannot therefore premise his Marquardt Tweet claim on the reference to black markets in The Lead Tweet. *See* Fla. Stat. § 770.07 (2021); *see also Norkin v. The Fla. Bar*, 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018); *Holt v. Tampa Bay Television, Inc.*, No. 03-11189, 2006 WL 5063132, at *3 (Fla. 13th Cir. Ct. Mar. 17, 2006), *aff'd*, 976 So. 2d 1106 (Fla. 2d DCA 2007).

To the extent Young seeks to derive The Lead Tweet's defamatory meaning from the Segment,[7] the Segment, when viewed in the context of its entirety, as this Court must do, also does not give rise to the implication alleged. The First Banner and anchor intro do not imply that *Young* was operating in a black market. Although the First Banner does periodically appear while the Segment is discussing Young, it is clear from the Segment and what is being reported that the reference to black markets is not contextually about Young. Rather, the First and Second Banners describe the extraordinarily difficult predicament faced by people trying to get out of Afghanistan, exorbitant prices and safety concerns being among the perils. In doing so, the Segment reports on an individual that "came up to" the First Unidentified Man featured in the Segment and asked for $10,000 per person in cash for evacuations and the Second Unidentified Man in the Segment who "met with" a Kabul man offering a spot on an evacuation flight list for $50,000. Girones Decl., Comp. Ex. A; (D.E. 23). In contrast, the portion of the Segment discussing Young includes Young's assertion that "Afghans trying to leave are expected to have sponsors pay for them" so that there is someone "able to pay evacuation costs." *Id*. To twist Young's own statements explaining that he works with individuals who have sponsors to mean that he was operating on an illegal black market contradicts the words used in the reporting. *Id*. The Segment and The Lead Tweet do not support the implication Young seeks to ascribe to them.

Third, Young alleges the Publications falsely imply that he was exploiting Afghans by demanding high fees. (D.E. 1 ¶¶ 67-68, 96, 98). The Publications include several examples of individuals being presented with evacuation demands that far exceed their capacity to pay under life and death circumstances. Girones Decl., Comp. Ex. A; (D.E. 23) ("according to Afghans and activists [CNN has] spoken with, desperate Afghans are now being exploited, like that [First Unidentified Man], told that they can get them or their families out if they pay exorbitant often impossible amounts."); Girones Decl., Ex. D ("'It's getting worse because now it's becoming normalized and desperation has grown,' says Hazami Barmada, a humanitarian aid worker who has organized flights out of Afghanistan and says people 'absolutely are' making money by exploiting that desperation."); Girones Decl., Comp. Ex. C ("there is growing exploitation of desperate Afghans trying to get out. Private operators telling them it'll take families 10s of 1000s

---

[7] Here again, the Segment cannot form the basis of the claims arising from The Lead Tweet because the Segment itself can only give rise to one cause of action in Florida. *See, supra*, note 5.

of dollars. We spoke with two Afghans trying to get their families out."). And while Young's prices are described, the statements from Young in the Segment and Article acknowledge evacuation prices are "highly volatile and based on environmental realities" because, as Young explains, "availability is extremely limited and demand is high . . . that's how economics works, unfortunately." Girones Decl., Comp. Ex. A, Ex. D; (D.E. 23). For this reason, the Segment and Article explain that Young insists that individuals he evacuates have sponsors, so that someone—other than the individual trying to evacuate—can pay the high cost of the evacuation. When viewed in their entirety, the Publications clearly convey Young was providing evacuations from Afghanistan that were supported by sponsors. Although Young was charging the sponsors high prices for the evacuations, the Publications explain the context and do not support an inference that Young was exploiting individual Afghans directly.

Finally, Young claims the Article and the Segment imply that he was "a scam artist who could not deliver" because they included the statement "CNN has not confirmed whether these operators charging the high fees have successfully evacuated anyone who paid to exit the country, as Young claims."[8] (D.E. 1 ¶¶ 59, 102-103); *see also* Girones Decl., Ex. D. Contrary to Young's manufactured interpretation, the statement simply communicates to the reader that CNN had not verified the results of these private evacuations. *See, e.g.*, *Khashan v. State Farm Mut. Auto. Ins., Co.*, No. B290652, 2019 WL 5445199, at *6 (Cal. Ct. App. Oct. 24, 2019) (statement that insurer was "unable to confirm" truth does "no more than accurately report what [author] knew to be true."). It is the "kind of statement" that is included in publications so as not to mislead viewers and "does not suggest to the reader" that Young is a "criminal, a bad businessperson, or some other defamatory meaning." *Boyle v. Cape Cod Times*, No. BACV200600760A, 2009 WL 6593979, at *5-6 (Mass. Super. Nov. 9, 2009), *aff'd*, 959 N.E.2d 457 (Mass. App. Ct. 2012) (statement that publisher could not reach plaintiff for comment was not defamatory); *see also Swanson v. Baker & McKenzie, LLP*, No. 12C8290, 2013 WL 1087579, at *7 (N.D. Ill. Mar. 14, 2013), *aff'd*, 527 F. App'x 572 (7th Cir. 2013) (finding employer's statement that it "could not confirm" the plaintiff's employment did not imply the plaintiff was a "liar and a fraud"). CNN not confirming the success of private evacuations does

---

[8] Young cannot base his claim on the Segment because the Segment does not make mention of CNN's efforts to confirm the success of evacuations and thus cannot give rise to the implication alleged.

not give rise to an implication that Young was a scammer or bad actor. Again, Young's interpretation goes too far.

In context, the Publications negate the allegedly false and defamatory implications alleged by Young. *See Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 148-49 (D.D.C. 2017) (noting article "specifically includes facts that negate the implications that [plaintiff] conjures up."); *see also Parekh*, 820 F. App'x at 833 (where plaintiff's denials were included in report, "an ordinary reader would not understand the [] challenged statement to have a defamatory meaning."). He cannot, therefore, premise defamation by implication claims on these statements.

### 3. *Young has not alleged CNN intended or endorsed any implication.*

Young's defamation by implication claim also fails because he has not plausibly alleged CNN intended any of the defamatory implications he identifies. To state a defamation by implication claim, the defamatory language must "affirmatively suggest that the author **intends or endorses** the inference." *Rapp*, 997 So. 2d at 1107 (emphasis added) (quoting *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000)). Courts across the country agree. *See, e.g.*, *Nunes v. WP Co. LLC*, No. 20-7121, 2022 WL 997826, at *3-4 (D.C Cir. Apr. 1, 2022); *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 528-29 (6th Cir. 2007); *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002); *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681 (9th Cir. 1990); *Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1317-18 (7th Cir. 1988). Here, Young does not plead that CNN intended or endorsed the defamatory implications he alleges. His Complaint is deficient as a matter of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 682-83 (2009).

And, in any event, Young could not plead intent because the implications he alleges do not derive from the words used and there is nothing in the Publications that demonstrates any intent to convey or endorse the implications. The determination of whether an implication is intended or endorsed by the publisher is made based on a review of the publication itself, *i.e.,* on "the particular manner or language in which the true facts are conveyed" to determine if there is "additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference." *White*, 909 F.2d at 512 (emphasis in original); *Chapin*, 993 F.2d at 1093; *Compare Cianci v. New Times Publ'n Co.*, 639 F.2d 54, 60 (2d Cir. 1980) (when read as a whole, headline "Buddy, We Hardly Knew Ya," along with article detailing an account of rape

allegations made against Mayor "Buddy" Cianci lead to conclusion that the publisher was endorsing the rape victim's allegations).

Such "additional, affirmative evidence" is not present in the language used in the Publications. The Lead Tweet does not contain *any* reference to Young specifically and thus cannot suggest any intent on the part of CNN with respect to the implications Young alleges. Likewise, the language included in the remaining Publications belies any suggestion that CNN intended or endorsed the alleged implications. For example, the Segment and Article report Young was advertising his services on LinkedIn, which, as Young recognizes, is a professional network. (D.E. 1 ¶¶ 23, 28). And, as discussed, the Segment and Article include statements from Young that indicate he requires sponsors to pay the "highly volatile" evacuation costs based on "environmental realities." Girones Decl., Comp. Ex. A, Ex. D; (D.E. 23). Importantly, the Segment notes Young has indicated the costs were an unfortunate supply and demand issue, which the anchor agrees with:

> Marquardt: In another message, that person offering those evacuations, Zachary Young, he wrote, "availability is extremely limited and demand is high." Jake, he goes on to say "that's how economics works, unfortunately."
>
> Tapper: Unfortunately.

Girones Decl., Comp. Ex. A; (D.E. 23). The inclusion of Young's statements, and the anchor's agreement with Young about the unfortunate realities of supply and demand, negates any possible endorsement or intent of tying Young to a black market or exploiting desperate Afghans. *See, e.g.*, *Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 698 (S.D.N.Y. 1995) (article containing statement that "settlers like the Chaikens" turned settlements into "hothouses for the growth of terrorism" along with headline "In the Realm of Perfect Faith: Israel's Jewish Terrorists," which juxtaposed a quote from plaintiff, even if implying that Chaikens were terrorists, did not contain any evidence that such an implication was intended or endorsed); *see also Dodds*, 145 F.3d at 1064 (finding segment did not "itself contain any language demonstrating that [publisher] endorses any such defamatory implication"); *White*, 909 F.2d at 526 (finding phrase "White comes up clean" was not "sufficiently suggestive to enable a viewer to infer that [publisher] intended or endorsed a defamatory inference that White used drugs"). Simply put, the Publications do not demonstrate any supposed intent to label Young a black-market exploiter. Accordingly, the implication claim fails as a matter of law.

**C. Young's Claims Premised Upon Advertising His Services are not Actionable Either *Per Se* or by Implication.**

No matter how pleaded, Young's claims that CNN made statements or implications that Young advertised his services directly "to desperate Afghans" cannot be actionable. Not only do such claims fail on their face for the reasons discussed above, but such claims also fail for the independent reason that if any such statements or implications were made, they would be substantially true and not defamatory.

### 1. *The alleged statements or implications are substantially true.*

Any alleged statement or implication that Young was "advertising to Afghans" would be substantially true.[9] Under the substantial truth doctrine, "[n]ewspapers are not to be held to the exact facts or to the most minute details of the transactions they publish, … what the law requires is that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial." *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962) (citation omitted). It is only in cases in which the complained of statement would have a "different effect" upon the reader than the allegedly truthful statement set forth in the complaint, where an assertion of substantial truth will be overcome. *E.g., Hill v. Lakeland Ledger Publ'g Corp.*, 231 So. 2d 254, 256 (Fla. 2d DCA 1970); *McCormick*, 139 So. 2d at 200. Application of the "different effect" test requires courts to eliminate the alleged falsities in the publication and determine whether the change produces a "different effect" upon the reader or viewer. *Id.*

Minor or technical inaccuracies in an allegedly false and defamatory statement are not a sufficient basis to defeat a claim of substantial truth unless those inaccuracies alter the "gist" of the statement. *Masson v. New Yorker Mag.*, 501 U.S. 496, 516 (1991); *Parekh*, 820 F. App'x at 834 (citing *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 706-07 (Fla. 3d DCA 1999)). The policy behind this defense is that

---

[9] It is appropriate for the Court to address the issue of substantial truth on a motion to dismiss, either as a defense or as part of the falsity element of Young's case. *See Marder v. TEGNA Inc.*, No. 19-81283, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (dismissing statement that was substantially true); *Cape Publ'n, Inc. v. Reakes*, 840 So. 2d 277, 280 (Fla. 5th DCA 2003) (discussing substantial truth as an analysis as part of the falsity element of a defamation claim); *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999) ("[a]ccording to the U.S. Supreme Court and Florida case law, falsity only exists if the publication is substantially and materially false, not just if it is technically false").

> [n]ot every error or inaccuracy should be actionable. The error should be a
> significant variation from the truth to give rise to liability. In order to avoid a
> "chilling" effect on the exercise of First Amendment rights, the media must be
> allowed "breathing space."

*Clark v. Clark*, No. 93-47-CA, 21 Media L. Rep. 1650, at *3 (Fla. 4th Cir. Ct. May 26, 1993).

In this case, the Publications at issue clearly report that Young was advertising evacuations from Afghanistan on LinkedIn.[10] Girones Decl., Comp. Ex. A, Comp. Ex. C, Ex. D; (D.E. 23). And the Publications repeatedly report on Young's statements concerning the need for sponsors. *Id.* All of this Young concedes as true. (D.E. 1 ¶¶ 23, 24, 31, 67). The plain language contained in the reporting is therefore at least substantially true, and thus the claims must fail.

Even if CNN had omitted any reference to sponsors from the Publications, any such reporting still would be substantially true. Under the First Amendment, it is irrelevant whether Young was advertising evacuations from Afghanistan on LinkedIn "to Afghans" or advertising evacuations from Afghanistan on LinkedIn "to sponsors." *Masson*, 501 U.S. at 516. Regardless of whether Young was advertising to sponsors or to Afghans, the gist of the reporting would be that Young was advertising evacuations out of Afghanistan on LinkedIn. A fact he does not dispute. Excluding the words "to sponsors" would not produce a different effect on a viewer or reader of the Publications. *Smith*, 731 So. 2d at 707. Either with sponsors or without, the viewers would understand that Young was advertising his services to get people out of Afghanistan. Therefore, the alleged statements or implications are nonactionable.

**2. The alleged statements or implications are not defamatory as a matter of law.**

Moreover, even if such statements or implications were false, indicating that someone is advertising evacuation services from Afghanistan to Afghans, as opposed to sponsors, is not defamatory as a matter of law. *Rubin*, 271 F.3d at 1306 ("where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint"); *Parekh*, 820 F. App'x at 833 (affirming dismissal of defamation claims with prejudice where statements were not capable of defamatory meaning). A defamatory statement is one that tends to "harm the reputation of another as to lower him in the estimation of

---

[10] Once again, The Lead Tweet makes no mention of Young's advertisements in any manner and should not be the basis for any claims concerning this alleged statement or implication.

the community or to deter third persons from associating or dealing with him." *Thomas*, 699 So. 2d at 803. There is nothing unlawful or inherently harmful about reporting an individual was advertising his business services to a particular demographic instead of to corporate sponsors. *See, e.g., Advertising*, *Black's Law Dictionary* (11th ed. 2019) ("1. the action of drawing the public's attention to something to promote its sale. 2. The business of producing and circulating advertisements."). Accordingly, Young cannot premise his claims on the alleged statements or implications that Young was advertising to Afghans.

> **D. Young's Group Libel Claim Fails as a Matter of Law.**

Young also purports to bring an independent group libel claim against CNN. As an initial matter, this claim is indistinguishable from Young's defamation claims and is barred by the single action rule. Notwithstanding the single action rule, the group libel claim fails because the challenged Publications expressly reference Young, and he does not otherwise allege a sufficiently defined group to support this claim.

> ### 1. *Young's group libel claim violates Florida's single action rule.*

In Florida, the "single cause of action rule" provides that the publication of allegedly false and defamatory material gives rise to a single cause of action for defamation. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992); *see also Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 328236, at *11 (S.D. Fla. Jan. 23, 2015) ("prohib[iting] defamation claims from being re-characterized in additional, separate counts for *e.g.*, libel, slander") (citation and brackets omitted). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).

Here, Young's group libel claim mirrors his defamation claims. The group libel claim purports to challenge statements that evacuations "were being sold on a black market" (D.E. 1 ¶¶ 106, 109-110) and Young's defamation claims similarly challenge statements that he was operating evacuations in a "black market" (D.E. 1 ¶¶ 85, 97, 93, 96, 98). The group libel claim also purports to challenge statements that desperate Afghans were being "exploited" (D.E. 1 ¶¶ 106, 109-110); likewise, Young's defamation claims challenge statements that he was "exploiting desperate Afghans" (D.E. 1 ¶¶ 85, 87, 93, 96, 98). And, Young challenges the Publications in his group libel claim (D.E. 1 ¶¶ 106-112), which also form the basis of his

defamation claims (D.E. 1 ¶¶ 49, 51-52, 57, 62-63, 83, 84, 85, 93, 95). To be sure, the group libel claim incorporates the same factual background as the defamation claims, (D.E. 1 ¶¶ 84, 95, 105), including the same challenged Publications and alleged harm to Young (D.E. 1 ¶¶ 39-63, 79-83). As such, the group libel claim is duplicative of Young's other defamation claims and barred by the single action rule. *See, e.g.*, *Miller v. Gizmodo Media Grp.*, No. 18-24227-CIV, 2019 WL 1790248, *10-11 (S.D. Fla. Apr. 24, 2019); *Klayman v. Judicial Watch Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014); *Ortega Trujillo v. Banco Central del Ecuador*, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998); *Kinsman v. Winston*, No. 6:15-cv-696, 2015 WL 12839267, *5-6 (M.D. Fla. Sept. 15, 2015).

##### 2. *The Complaint does not support application of the group libel doctrine.*

Even if Young could avoid application of Florida's single action rule, his group libel claim still fails as a matter of law. A group libel claim is indistinguishable from an ordinary defamation claim by a single plaintiff. *See Thomas*, 699 So. 2d at 803-05 (applying the standard elements of defamation to the alleged defamation of a group). Rather than a distinct cause of action, group libel is a doctrine that provides an alternative means of satisfying the "of and concerning" element when a defendant defames a small group *without expressly referring to any individual plaintiff*. *See Adams v. WFTV Inc.*, No. CI-95-5258, 24 Media L. Rep. 1350, at *1-2 (Fla. 9th Cir. Ct. Dec. 14, 1995), *aff'd*, 691 So. 2d 557 (Fla. 5th DCA 1997) (explaining at length the doctrine's 400-year history). Here, Young alleges that he was expressly referenced in the Publications at issue. *See* (D.E. 1 ¶¶ 45-63). This fact alone precludes his group libel claim.

Moreover, the group libel doctrine applies "only if (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member." *Thomas,* 699 So. 2d at 804 (citations omitted); s*ee also Adams*, 691 So. 2d at 557 (explaining that the doctrine permits individuals within small, discrete groups—numbering no more than 25 persons—to individually sue for defamation "when there is no specific reference to a member."). Additionally, a group libel claim can only be maintained if the alleged defamation applies to *every person* in the group. *See Adams*, 691 So. 2d at 558 (citation omitted). Young's group libel claim fails because it does not reference a sufficiently defined group to satisfy the "of and concerning" requirement. And, the challenged statements certainly do not defame every person of this ill-defined group.

Here, the group libel claim is based on CNN's alleged disparagement of Young's profession, which he describes alternatively as "providers of evacuations" and/or "private operators." (D.E. 1 ¶¶ 106-112). This vague description—without any manner of limitation, qualification, or explanation—is insufficiently defined to evaluate who or what belongs in the allegedly defamed group. *See Thomas*, 699 So. 2d at 805 ("an impersonal reproach of an indeterminate class is not actionable") (citation omitted); *see also Fraternal Order of Police v. News & Sun-Sentinel*, No. 85-21006, 12 Media L. Rep. 1619, at *2 (Fla. 17th Cir. Ct. Dec. 13, 1985) ("vague general references to a comparatively large group do not constitute actionable defamation") (citation omitted). Moreover, the ambiguous description of the alleged class of defamed persons also appears to refer to "every single person in a given occupation," which is not actionable under the group libel doctrine. *See Adams*, 24 Media L. Rep. 1350, at *2. *See also Bass v. Post-Newsweek Stations of Florida Inc.*, No. 95-16623-CA-20, 24 Media L. Rep. 1991, at *1 (11th Cir. Feb. 7, 1996) *and Brown v. New World Commc'ns of Tampa, Inc.*, No. 95-5336, 25 Media L. Rep. 1510, at *1-2 (Fla. 13th Cir. Ct. Oct. 3, 1996).

Even if Young could define the precise contours of his putative group, he does not plausibly allege sufficient facts to suggest that CNN defamed every person in the group. To the contrary, Young expressly distances himself from the alleged class by acknowledging that many operators were, and are, exploitative, (D.E. 1 ¶ 18), and alleging defamatory Publications were "false as [they] pertained to Young," and "false as [they] applied to Young," not as applied to anyone else. *See* (D.E. 1 ¶¶ 110-111). Certainly, the Publications at issue are not of and concerning every existing operator, and the claim fails for this independent reason as well.[11]

## II.   NEMEX'S TRADE LIBEL CLAIM FAILS AS A MATTER OF LAW.

Count IV, trade libel, is the only claim filed on behalf of Nemex. To state a claim for trade libel, a plaintiff must allege (1) a falsehood, (2) published by the defendant to a third person, (3) that the defendant knew or should have known would likely induce others not to deal with the plaintiff, (4) that the falsehood played a material and substantial role in inducing others not to deal with the plaintiff, and (5) that the plaintiff incurred special damages, proximately caused by the false publication. *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006). Additionally, the plaintiff must also demonstrate that the publication—as with

---

[11] Even if the Court found Young could state his group libel claim, the claim would in any event fail for the reasons Counts I and II fail. *See, supra,* Parts A and B.

ordinary defamation—was "of and concerning" the plaintiff. *See Sanchez Sifonte v. Fonseca*, No. 21-CV-20543, 2021 WL 5086297, at \*3 (S.D. Fla. Nov. 1, 2021); *Nat'l Numismatic Certification, LLC. v. eBay, Inc.*, No. 6:08-CV-42, 2008 WL 2704404, at \*21 (M.D. Fla. July 8, 2008). That is, the statement at issue must be "specifically directed at the plaintiff." *Rosenblatt*, 383 U.S. at 81 (1966) (of and concerning requirement is constitutionally mandated).

Here, Nemex's claim fails because the Complaint does not allege—nor can it—that CNN published any statement "of and concerning" Nemex. And a review of the Publications at issue clearly shows that CNN did not, in fact, mention or allude to Nemex. *See generally* Girones Decl., Comp. Ex. A, Ex. B, Comp. Ex. C, Ex. D; (D.E. 23). *See also Beres v. Daily Journal Corp.*, No. 0:22-CV-60123, 2022 WL 805733, at \*4 (S.D. Fla. Mar. 8, 2022) (finding plaintiff could not meet "of and concerning" requirement with respect to article in which he was not mentioned). Nemex tries to sidestep this fundamental element by asserting that CNN should have been aware of its existence. The relevant inquiry, however, is not what the *defendant* knew or should have known, but whether the average, reasonable *reader or viewer* would interpret the allegedly defamatory statement as concerning the plaintiff. *See Beres*, 2022 WL 805733, at \*4. The Complaint includes no facts to suggest that any reader or viewer could reasonably interpret any published statement as describing or referring to Nemex. *See* (D.E. 1); *see also Horsley v. Feldt*, 304 F.3d 1125, 1136 (11th Cir. 2002); *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1260 (S.D. Fla. 2021). Thus, the Complaint does not plausibly allege sufficient facts to support a trade libel claim.

Because the statements are not "of and concerning" Nemex, the trade libel claim simply repackages Young's defamation claims and violates Florida's single action rule. Like Young's defamation claims, the trade libel claim incorporates the same factual allegations, (D.E. 1 ¶¶ 84, 95, 105, 117), which include the same challenged Publications and alleged statements and implications contained therein (D.E. 1 ¶¶ 39-63). Importantly, the trade libel claim incorporates the same *alleged harm to Young* that forms the basis of Young's defamation claims. (D.E. 1 ¶¶ 79-83). At bottom, the trade libel claim is simply another attempt to recast Young's defamation claims and recover the same alleged harm. *See Callaway Land & Cattle Co.*, 831 So. 2d at 208-09 (stressing single action rule was "designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm"). As such, the claim is barred by the single action rule

and must be dismissed as a matter of law. *See Buckley v. Moore*, No. 20-CIV-61023, 2021 WL 3173185, at *7 (S.D. Fla. July 26, 2021) (dismissing a trade libel claim, under the single action rule, because it duplicated the plaintiffs' defamation claim).

Finally, Nemex's general allegation that it suffered "damages" is insufficient to state a claim for trade libel. *See* (D.E. 1 ¶¶ 16, 120). A trade libel plaintiff must specifically plead special damages by establishing a "pecuniary loss that has been realized or liquidated, as in the case of specific lost sales." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999); *see also Nat'l Numismatic Certification*, 2008 WL 2704404, at *20 (explaining that allegations of prejudice to business or pecuniary harm are insufficient rebuff a motion to dismiss a trade libel claim). Nemex has pleaded only that it "suffered damages" as a result of the Publications. Such boilerplate allegations wholly fail to even attempt to plead special damages. Thus, Nemex cannot state a trade libel claim on this basis as well.

<u>**CONCLUSION**</u>

Young's inability to satisfy the elements of either his defamation *per se* or implication claims requires dismissal as a matter of law. His group libel claim likewise cannot stand because he is expressly referenced in the Publications and the allegedly defamed group is not identifiable. None of the Publications are "of and concerning" Nemex and, thus, its trade libel claim must also be dismissed. In short, Plaintiffs have failed to state any cause of action against CNN as a matter of law. Thus, CNN respectfully requests this Court dismiss Plaintiffs' Complaint with prejudice.

Dated: May 25, 2022.

Respectfully Submitted,

SHULLMAN FUGATE PLLC

<u>**Deanna K. Shullman**</u>
Rachel E. Fugate (FBN 144029)
rfugate@shullmanfugate.com
Deanna K. Shullman (FBN 514462)
dshullman@shullmanfugate.com
Giselle M. Girones (FBN 124373)
ggirones@shullmanfugate.com
Minch Minchin (FBN 1015950)
mminchin@shullmanfugate.com
2101 Vista Parkway, Ste. 4006
West Palm Beach, FL 33411
Tel: (561) 429-3619
*Attorneys for Defendant CNN*

25